CALVIN DEWOLF, Plaintiff in Error, *v.* DAVID STRADER, and
OLIVER B. D. JONES, Defendants in Error.

### ERROR TO KANE.

It requires a retainer or fee paid to constitute the relation of attorney and client.

An attorney who is requested to prepare a deed or mortgage, no legal advice being required, is not privileged, and may testify as to what comes to his knowledge in connection with such a transaction.

A deed, though absolute on its face, given to secure a pre-existing debt, will be considered a mortgage as to other creditors.

THIS bill charges that David Strader was, on the 20th October, 1848, possessed of divers lots and parcels of land in the town of St. Charles, on the east side of Fox river, in Kane county, and claimed to be the owner.

That said Strader, on that day was indebted to plaintiff in the sum of $558.18, money lent. And to Andrew J. Brackett, and to Eddy, Brackett & Watkins, of Chicago, for goods sold and delivered, upon which promissory notes were afterwards executed by said Strader to them, and were assigned to plaintiff.

That said Strader was, at the same time largely indebted to other persons, whose names and residences are unknown to plaintiff, and was in embarrassed circumstances, and unable to meet his liabilities.

That on or about the aforesaid time, one Oliver B. D. Jones, another defendant in this suit, a minor, was in the employ of said Strader, at St. Charles, in the capacity of a clerk, and conversant with his business and circumstances, and knew that said Strader was unable to make immediate payment to plaintiff and other creditors.

That on the day aforesaid, said Strader executed a deed of the premises and lots, etc., mentioned in the bill, in fee simple, to the said Oliver B. D. Jones, which deed was duly acknowledged and recorded in Kane county, on the 21st of October, A. D. 1848, and which is in substance as follows : Deed from David Strader and Susan his wife, of Kane county, Illinois, to Oliver B. D. Jones, of same place, for the consideration of $2,000, conveying lots in Kane county, Illinois, as follows: (describing them).

That after the execution and delivery of the said deed to the said Jones, the said Strader continued in the possession and occupation of said premises, until some time in the summer of 1850, without entering into any contract or agreement with said Jones, and used and controlled the same without accounting to said Jones for the moneys received from the tenants.

That some time in the year 1850, said Jones took possession of said premises and lots, and said Jones immediately thereafter left this State, and went to some place in New Hampshire, and various persons, professing to act by the authority of the said Jones, have continued to manage and control the said property to the present time.

That upon said lots there are improvements, etc.

The plaintiff, on the 18th of April, 1859, obtained a judgment against the said Strader, upon aforesaid indebtedness, for the sum of $782.18, in the Cook County Court, upon which judgment execution was issued, directed to sheriff of Kane county, and by him levied on said premises, and said premises were sold, having been duly advertised, to one P. J. Burchell; agent of plaintiff, and a certificate of such sale was duly issued to said Burchell, which was assigned to plaintiff; and afterwards, on the 14th day of October, 1850, sheriff executed a deed of said premises to plaintiff, which was duly recorded in the recorder's office of Kane county, in book No. 20 of Deeds, page 290, and is in substance as follows, viz.: (setting it out).

That the deed from Strader and wife to Jones was without valuable consideration, or, if any consideration was paid, it was much less than the value of the property, and the deed was contrived for the purpose of hindering, delaying and defrauding plaintiff and others, and preventing them from collecting their just debts.

That the same was, by arrangement between Strader and Jones, made for hindering, delaying and preventing plaintiff and others from collecting their just debts.

Charges combination and various pretenses on the part of defendants, and that said Strader was indebted to said Jones, but alleges that he was not so indebted, or, if indebted at all, in a very small amount.

That plaintiff was informed that Strader had received about $200 due Jones, under his father's will, and if that be so, plaintiff offers to pay the same to said Jones. That said deed was not made to secure any debt to Jones, but for hindering and delaying plaintiff and others in the collection of their debts, and upon an agreement between them that the premises should be re-conveyed when Strader had compromised with plaintiff and others. And upon agreement Strader should still use and occupy the premises, as heretofore, and which he did accordingly.

Calls for answer without oath, to all allegations and interrogatories.

Prays injunction against defendants, etc., meddling with said premises, or transferring the same, from the collection of rents,

etc. And that they further stand to, abide by and perform the direction and decree of the court in the premises.

Injunction granted.

The answer of Jones admits that Strader was possessed of the premises, and claimed to be the owner. That prior to the 20th October, 1848, he married Jones' mother, at which time he was without property, but that she had at the time of the marriage about $2,000 belonging to defendant, Jones, bequeathed him by his father, and given him by his grandfather, with which said moneys Strader purchased the premises in the bill mentioned. That Strader at the time he purchased knew the money belonged to defendant Jones, and held the same in trust for him. Denies that Strader was indebted to plaintiff in any sum before the 20th of October, 1848. Denies that Strader was largely indebted, or was embarrassed, and was unable to meet his liabilities. Admits that about the 20th October, 1848, defendant Jones, being a minor, was in the employ of Strader, as a clerk, but denies that he was conversant with his circumstances or business, or that he knew he was unable to make immediate payment of his debts to plaintiff and others. Admits that on the 20th October, 1848, Strader and wife conveyed to him the premises, as alleged in the bill.

Admits that Strader continued in the possession, as alleged in the bill, until the summer of 1850, but denies his consent thereto, but avers that he endeavored all that time to get the possession, without the necessity of a suit, and that in the summer of 1850 he succeeded, and has continued in the possession, and in the receipt of the rent and profits hitherto ; but denies that the rents and profits are worth $200 over taxes and assessments, but are not worth over $100.

Denies that on the 10th of April, 1849, or at any other time, plaintiff obtained a judgment, as charged, issued execution, and sold the premises. Denies the advertising, the purchasing and the making, delivering and recording of the certificate of purchase, as alleged.

Avers, if there was such a judgment, it was by confession, and without consideration, and fraudulently confessed, for the purpose of enabling plaintiff to file his bill, to set aside the conveyance to defendant Jones, for the benefit of Strader.

Denies that the deed to defendant Jones was made without valuable consideration, or that the same was much less than the value of the property, or that the same was for the purpose of hindering or delaying plaintiff and others in the collection of their debts, or to defraud or prevent plaintiff and others from collecting their just debts.

Denies that defendant Jones took the deed, or continues to

hold the same, for like purpose. Avers that the deed was made to defendant Jones for money, which Strader had received, belonging to defendant Jones, bequeathed to him by his father, and given him by his grandfather, and for work, labor and services of defendant Jones for Strader, before the giving of the deed.

Admits that he was of age at the filing of the bill. Denies that the deed from Strader to him was for the purpose of hindering and delaying plaintiff and other creditors from collecting their debts, but in payment of demands due defendant Jones. Denies all combination, etc.

Denies the receipt from Strader of any money, goods, chattels, board, washing, lodging, or tuition in Rush Medical College at Strader's expense. Denies all pretenses, or that the debt due him was very small, and much less than the value of the premises.

Denies that defendant was to reconvey to Strader, or any other, for his use, when he had compromised with plaintiff and others.

Denies any understanding that Strader should occupy without hindrance from defendant, or any agreement to reconvey the premises upon any event.

Avers that if there had been any indebtedness previous to the 10th of April, 1849, to plaintiff, or Eddy, Brackett & Watkins, it had been fully paid.

General replication.

*Wm. D. Barry* was called as a witness. Knows parties; Strader and Jones, since 1844; plaintiff, since three or four years; knows that Strader transferred some land to Jones by deed; thinks it was in fall of 1848; knows nothing of any consideration paid; heard no conversation about it at the time; some time before making the deed, Jones called on me and stated that Strader had some money in his possession which was left by his father or grandfather, and which came into the hands of his mother before her marriage with Strader; that he was afraid he was going to lose it, and wanted me to draw a bill in chancery to get it; I told him to wait and I would see Strader; I saw Strader, and told him what Jones said; he said he was willing to secure him in any way; that he was willing to deed over all the land he had in St. Charles, if I recollect right, as he had had hell long enough at home, if that would be satisfactory; he told me he would go home and fetch his deeds down to my office, and that I might make a deed to Jones; he did so, and I accordingly made the deed; about that time I saw Mr. Jones and told him of it, and he said that was satisfactory; I asked Jones how much Strader owed him; he showed me a

DeWolf *v.* Strader et al.

copy of a will, I think, and according to my best recollection, the original sum was $350; don't recollect that he claimed more at the time of making the deed than the $350 mentioned in the will, and interest on it to that date; I understood that Strader married Jones' mother; I think that Jones told me that he was not twenty-one at the date of the deed; I should think the property conveyed worth between $2,000 and $3,000; the deed contained all the lots owned by Strader in St. Charles; Jones told me that Strader owed more than he ever would or could pay; Messrs. Stevens & Green have occupied the store on the property part of the last two years, Mr. Furnald and Collins a part; Norton & Strader have occupied the house a part of the last two years, and a Mr. Cook a part, and still does; don't know who occupied the other house; don't know that Jones has taken possession of any part of it.

Think I have testified before in relation to the sale of the property in question by Strader to Jones, at a trial at Geneva, before probate court, and a jury, on a *ca. sa.* against Strader; have no recollection on that occasion of stating that the consideration paid for the property was $1,000; am as positive of this as anything I have testified about; I stated upon that occasion, if I recollect right, that Jones told me after the deed was made, that Strader owed him $500 more than what was given him by the will of his father; that his mother had given him $500 before she was married, but that the money had never come into his hands; I don't recollect that there was anything said about a part of the consideration coming from his grandfather; my recollection is that I stated substantially then what I have now stated; I was, and am still, at times a practicing lawyer.

Other witnesses were examined, and depositions read.

Exceptions were taken to the whole deposition of Barry, for the reason that he is called on to disclose and does disclose what was communicated to him by defendant Jones while he was a client of said Barry, who was then acting as attorney for said Jones, and said communications were confidential; the questions are all irrelevant, leading and illegal; the answers irrelevant, evasive, and not responsive to the questions. Exceptions were also taken to other depositions.

The court ordered the following portions of said depositions suppressed, viz.: of Barry's deposition, all that part of answer to 6th interrogatory, commencing with the words "he said he was willing to secure him in any way;" the answers to the 7th, 12th and 13th. The others are not material to this decision.

To all of which rulings plaintiff excepted.

The bill was dismissed by the Circuit Court.

Thereupon the plaintiff sued out his writ of error, and assigns the following errors, that is to say :

The court erred in suppressing the several parts of the depositions of Barry, etc., mentioned in the order of the court, made in that behalf.

The court erred in dismissing plaintiff's bill, and in rendering a decree for defendants, and against the plaintiff.

The court erred in finding the facts in favor of defendants, upon the evidence, and in refusing the relief prayed for in the bill.

The court should have decreed an account of the rents and profits against defendant Jones, and after satisfying the amount of money left him by will, coming into Strader's hands, if any, have decreed the remainder of the property to be applied to the payment of plaintiff's judgment.

SCATES, McALLISTER & JEWETT, for Plaintiff in Error.

W. D. BARRY, for Defendants in Error.

BREESE, J. The principal question in this case is, chiefly, as to the admissibility of Mr. Barry, as a witness against the defendants in error. When giving his testimony, he made no objection that he was their counsel, nor did he claim the privilege of his clients, but voluntarily stated all he knew of the transaction, as communicated to him by the defendants. He now claims the privilege of his clients, and contends he was their counsel when the disclosures were made. It does not appear that such a relation did, in fact, exist at the time Mr. Barry wrote the deed, or had the conversations. There is no retainer shown, or offer to retain, or fee paid. This, and this only, can consummate that relation. The weight of evidence is, clearly, that Mr. Barry was acting as scrivener, merely to draw a deed. He was not consulted as counsel, or asked for a legal opinion on a state of facts, but to draw a deed, the necessity for which was freely communicated by the defendant Jones.

A case directly on this point, is found in 14 Pickering, 416, *Hatton* v. *Robinson*, in which it was held that, when an attorney at law was requested by a debtor to draw up a mortgage deed of his personal property, and the debtor disclosed his purposes in making such a conveyance, either without any particular motive, or in order to remove any scruple the attorney might have had, as to the character of the transaction, but no legal advice was asked or given, it was held that the testimony of the attorney, as to such communications, was admissible.

There can be but one opinion about this deed, unless it shall

be shown a *bona fide* indebtedness existed to Jones, and then it would be considered as a mortgage to secure Jones in the payment of his debt, asserted to be due from Strader to him. If Jones was a *bona fide* creditor of Strader, then the deed ought to have the effect of a mortgage, though absolute on its face. If Jones was not such creditor, then the conveyance was fraudulent and void, as designed to hinder, delay and defraud creditors.

The cause will be remanded to the Kane Circuit Court, with directions to refer it to the master in chancery, who will ascertain the amount actually and *bona fide* due Jones from Strader, at the time of the execution of the deed by Strader to Jones, and if any *bona fide* indebtedness shall be found to exist, and anything shall be found due, upon proper proof being made, then the deed will be decreed by the Circuit Court to be a mortgage, and it will stand as such for the amount proved. If nothing shall be found due at that date, then the deed will be adjudged fraudulent and void, as against *bona fide* creditors.

*Decree reversed.*