[Civ. No. 950.  Third Appellate District.—May 27, 1912.]

EDWARD F. DELGER, Plaintiff-Respondent, v. ABE JACOBS et al., Defendants; H. A. MOSS, B. T. MOLSNESS, BRISTOL COMMERCIAL COMPANY, a Corporation, and L. S. MELSTED, Appellants.

UNLAWFUL DETAINER—ASSIGNMENT OF LEASE—VIOLATION OF COVENANT —SUPPORT OF FINDING.—In action of unlawful detainer to recover the possession of leased premises, based on a forfeiture of the lease according to the terms thereof, by an alleged assignment of interests in the lease by the lessee, without the consent of the lessor, in violation of a covenant in the lease, it is held that a finding that such an assignment of the lease was so made by the lessee in violation of such covenant is supported by the evidence.

ID.—ISSUE AS TO ASSIGNMENT—LOSS NOT PROPERLY ACCOUNTED FOR— PROOF OF CONTENTS BY ATTORNEY DRAFTING ASSIGNMENT AND STENOGRAPHER—ABSENCE OF OBJECTION.—Where there was an issue as to the fact of an assignment of the lease, and the loss of the instrument was not satisfactorily accounted for, the testimony of the attorney who acted as scrivener in drafting the assignment, and of his stenographer to whom the same was dictated, were properly received as evidence of its contents; and where no objection to such evidence was urged when it was presented, the court properly refused to strike it out on the ground that the evidence was privileged.

ID.—TESTIMONY AS TO CONTENTS NOT PRIVILEGED—ATTORNEY ACTING AS SCRIVENER.—Where nothing transpired at the meeting to have the assignment executed in the nature of a confidential communication, which the law protects from disclosure, and the attorney acted rather as a scrivener than as an attorney in the transaction, merely to reduce the agreed assignment to writing, without any inquiry as to its legal effect, his subsequent testimony as to its contents, when the fact of its existence is denied or it has been lost, is not privileged.

ID.—CESSATION OF RULE AS TO PRIVILEGE IN CASE OF LOST INSTRUMENT. Even if the attorney acted in a privileged capacity in the drafting of a legal instrument, when the executed instrument has been subsequently lost, the rule of privilege ceases to exist, and its contents could be proved by him, as well as by any other witness who knew such contents.

ID.—OBJECTIONS TO COURT—ACTION AS TO TRANSCRIPT OF EVIDENCE OF LESSEE IN BANKRUPTCY—ADMISSIONS AGAINST INTEREST—RECORD UPON APPEAL.—Objections urged by other defendants to the action of the trial court in relation to a transcript of the evidence of the lessee in a bankruptcy case, a portion of which was read by

plaintiff to show his admissions against interest, which other defendants were not permitted to read until notices of counsel of plaintiff written thereon were erased, will not be considered where the whole deposition was admitted in evidence and is set out in full in the record upon appeal.

ID.—PRIOR SUIT OF UNLAWFUL DETAINER AGAINST LESSEE—ADJUDICATION OF FACT OF LEASE—TERMINATION OF SUIT—SATISFACTION OF JUDGMENT—ADMISSION AGAINST INTEREST.—The record of a prior suit of unlawful detainer by the lessor against the lessee, in which there was an adjudication of the fact of lease, which appears to be no longer pending, but was terminated by the satisfaction of the judgment thereon by the lessee, was properly admitted in the present action, if not as an estoppel, at least as an admission against his interest upon the material issue raised by him herein as to the existence of the lease.

ID.—ABSENCE OF ATTEMPT TO LIMIT EVIDENCE AS AGAINST OTHER DEFENDANTS DENYING LEASE.—Where there was no attempt of the other defendants denying the lease to limit such prior judgment to the original lessee, they are in no position to make such limitation upon appeal.

ID.—WAIVER OF BREACHES OF COVENANT BY LANDLORD UNDER LEASE—EQUITABLE ESTOPPEL NOT PLEADED.—The court properly excluded evidence of a waiver by the landlord of breaches of covenant under the lease. This claim was in the nature of an equitable estoppel, and it was necessary to plead it in order to introduce evidence in its support. It is held that there is no pretense of such plea in the answer.

ID.—APPELLANTS NOT AGGRIEVED BY RULING OF COURT UPON SEPARATE ANSWER OF LESSEE.—If it be conceded that the separate answer of the lessee contained a cause of action for affirmative relief, and that the court erred in sustaining an objection to evidence offered in support of its averments, the appellants, who do not include the lessee, are not aggrieved parties, and the error cannot be reviewed at their instance.

ID.—BASIS OF JUDGMENT IN UNLAWFUL DETAINER—ENTRY IN MINUTES—WRITTEN FINDINGS.—The entry in the minutes that damages for one month's unlawful detainer was $650 does not constitute the decision of the cause, but the decision which, under section 632 of the Code of Civil Procedure, is the basis of the final judgment is the written findings of the court, and the court properly estimated the damages as of the date of the findings, which accounts for the proper increase thereof to the sum of $1,020.

ID.—FINDINGS AGAINST EVIDENCE—REVERSAL OF JUDGMENT IN PART.— It is held that the findings are against the evidence as to possession of the leased property by the appellants, B. T. Molsness and the Bristol Commercial Company, and that the judgment as against

each of them for damages, attorneys' fees and costs must be reversed; and the court having found against the liability of appellant, L. A. Melsted, for damages, or attorneys' fees, the judgment against him for costs must be reversed, and otherwise it must be affirmed.

· APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

L. S. Melsted, and E. H. Williams, for Appellants.

Sullivan & Sullivan, and Theo. J. Roche, for Respondent.

BURNETT, J.—This action of unlawful detainer was brought to secure restitution of certain leased premises in San Francisco, a forfeiture of the lease and for damages in the value of the use and occupation of the property during the period of detention. Besides Jacobs, the lessee, the others were made parties defendant upon the theory that they had entered under and by permission of said lessee and were doing business on the demised premises by his authority. The complaint sets forth that "On the fifteenth day of July, 1910, plaintiff, by agreement and lease in writing, leased to said defendant Abe Jacobs" certain premises (describing them) for the term of five years from the first day of July, 1910, at the monthly rental of $650, "to be paid on the first day of each and every month in advance"; that, by virtue of said agreement and lease, the said Jacobs entered into possession and occupation of said property and still continues to occupy the same; that the lease contained certain terms, conditions, and covenants, among which was that "the lessee shall not sublet said premises, or any part thereof, nor assign this lease or any rights thereunder without the written consent of the lessor. Any assignment of this lease or any right thereunder, either directly or by operation of law, shall work a forfeiture of the same at the option of the lessor"; that after the execution of said lease and said entry of Jacobs "and prior to the first day of October, 1910, and contrary to the conditions and covenants of said lease, said defendant,

Abe Jacobs, without the consent in writing or otherwise of said plaintiff, assigned interests in said lease to said defendants, B. T. Molsness, H. A. Moss and Bristol Commercial Company, a corporation, and let and sublet said demised premises to said defendants." The violation of certain other covenants is also alleged, but this feature of the case we deem unnecessary to notice. It appears further that said defendants "are now, ever since the first day of October, 1910, have been, and were at the time of the service of the notice to quit hereinafter mentioned, in the possession of said demised premises"; that plaintiff served upon the defendants "three days' written notice to quit said premises and deliver possession thereof to plaintiff"; that defendants "have refused and neglected and still refuse and neglect to quit said premises or deliver possession thereof to plaintiff." A demurrer interposed by defendants was overruled by the court and they filed an answer in which they denied positively the making of the lease, that Jacobs entered into possession thereunder, that there was ever any assignment of said lease or any part thereof by said Jacobs or that he sublet said premises or any part thereof to any person in any form or manner, that any of the defendants violated any of the other covenants of the lease or that defendants, B. T. Molsness, H. A. Moss and Bristol Commercial Company or any of them "are now, or ever since the first day of October, 1910, have been, or were at any time or at all in the possession of said demised premises," or that any of the defendants was served with "three days' notice to quit, such as specified in section 1161 of the Code of Civil Procedure or otherwise or at all." There are also some affirmative allegations of fraud against the plaintiff in connection with the leasing of said premises, which will be considered hereafter. From the judgment in favor of plaintiff all the defendants except the said Abe Jacobs have appealed, the last named having filed a waiver of "any and all rights that I may have to move for a new trial of the above-entitled matter, or to prosecute an appeal from the judgment rendered in said matter on the eighteenth day of November, 1910, in favor of plaintiff and against defendants."

There can be no doubt that the demurrer to the complaint was properly overruled. It is equally clear that there was

sufficient evidence to support the material findings, with one exception hereafter to be noticed.

As to the execution of the lease itself, it may be said that, while apparently disputed in the opening brief of appellants, in their closing brief they declared that "Everybody knows and admits that a lease was signed and delivered, but our answer shows that it was secured through fraud," and, to explain the denial of its execution in the answer, it is stated that "where a lease is secured through fraud its execution must be denied, for the obvious reason that the meeting of minds essential to the creation of a valid contract does not take place." In view of this statement and of the fact that no evidence of fraud in connection with the lease is exhibited, it is manifestly unnecessary to direct specific attention to the showing made as to this particular finding of the court.

Of the evidence that there was a violation of the covenant of the lease in reference to assignment, it is deemed sufficient to set forth the following: The plaintiff testified that he never gave any consent, in writing or otherwise, to Jacobs to assign any interest in the lease, or to assign the lease itself, or to sublet any of the premises described in the lease, and the court was justified in the inference that, on the sixteenth day of July, 1910, defendant Jacobs executed and delivered to B. T. Molsness and Henry A. Moss a written instrument in the following form:

"San Francisco, July 16th, 1910.

"I hereby certify and declare that the bill of sale taken in my name from Morris Steinberg, covering the saloon known as the 'Bristol,' 1001 Market Street, San Francisco, also the lease covering the said premises from the owner, and the municipal liquor license which has been taken in my name and has been received by me for the use and benefit of B. T. Molsness, Henry A. Moss and myself, the undersigned, each of which parties is entitled to an undivided one-third interest in and to all of said property, and I hereby sell, assign and transfer to each of said B. T. Molsness and Henry A. Moss, an undivided one-third interest in and to all of said property."

It is stoutly insisted by appellants that no such instrument was executed, but, in answer to this contention, it is sufficient to set forth the following testimony, which manifestly justi-

fies the court's finding as to the assignment: Mr. Leon E. Prescott, a witness for plaintiff, was interrogated concerning the foregoing purported assignment and he stated that he dictated it to his stenographer, Miss Whelan, at the request of Mr. Jacobs, "the three gentlemen being present at the time, Mr. Moss, Mr. Molsness and Mr. Jacobs, and it was transcribed and signed by Mr. Jacobs, and a copy given to Mr. Molsness, and a copy given to Mr. Moss and Mr. Jacobs kept the third." Miss Whelan testified that she took the dictation of this instrument from Mr. Prescott and transcribed it into longhand and delivered it to the latter in the presence of Moss, Jacobs and Molsness. Mr. Morris Steinberg testified that, on said July 16th, at his place of business, he had a conversation with Mr. Jacobs in reference to the premises leased by the latter and that Jacobs said that "he could not sign over the saloon and license and lease, as he agreed, to me for advancing him money, for the reason that Mr. Moss and Molsness compelled him that day to sign over a one-third interest to each of the parties at Mr. Prescott's office," and that Mr. Jacobs handed him the paper which had been executed and that it was "the same thing in sum and substance" as the aforesaid purported assignment and that it was signed by Abe Jacobs. The defendants Moss, Molsness and Jacobs testified that an instrument was executed by Jacobs on said date and one copy delivered to Moss and another to Molsness, but they denied that it constituted an assignment, but claimed that it was simply a mortgage or pledge to secure the repayment of money that had been advanced for the purchase of the saloon fixtures. None of these witnesses, however, could give the contents of the instrument nor did any of them produce a copy of it or satisfactorily account for its loss. The court was indeed justified in regarding with grave suspicion their testimony upon this point. There are other circumstances, unnecessary to detail, that lend support to the theory of assignment. In this connection we may notice the claim of appellants that the testimony of Mr. Prescott and Miss Whelan should have been excluded as privileged, for the reason that Mr. Prescott was the attorney for Jacobs, Moss and Molsness and Miss Whelan was his stenographer. As a matter of fact, the testimony of these two witnesses showing the execution of said assignment

was given without objection, and hence the ruling of the court refusing to strike it out could be justified on that ground. Miss Whelan identified the instrument, marked "Plaintiff's Exhibit 7," as a copy of Mr. Prescott's dictation already referred to. Not only was this evidence received without objection, but it must be plain that to these preliminary matters the rule of privilege would not extend. The essential facts as to the contents of said instrument and its execution and delivery were declared by Mr. Prescott, as aforesaid, in response to questions to which no objection was made. Appellants, to take advantage of the rule, should have objected promptly, of course, to any testimony as to these matters when it appeared that the witness sustained the relation that the law holds inviolate. But, assuming that the objection was timely, we think the facts take the case without the operation of said rule. It seems clear that the purpose of the meeting of the parties on said July 16th was the preparation and execution of an instrument that would afford Moss protection for the money that he had invested. Nothing transpired in the nature of a confidential communication that the law protects from disclosure. Mr. Prescott acted rather as a scrivener than attorney in the transaction. In 1 Greenleaf on Evidence, section 239 (sixteenth edition), it is said: "On the other hand, the person must be at the time acting as legal adviser, hence a communication with an attorney merely, as with a lender of money, a friend, or a scrivener, is not privileged."

In *Borum* v. *Fouts*, 15 Ind. 50, it is held that "when the terms of a contract have been agreed upon between the parties, and an attorney is afterward employed as a scrivener merely to reduce the contract to writing, and no inquiry is made of him as to its legal effect, communications made to him while thus engaged will not be regarded as privileged."

In *De Wolf* v. *Strader*, 26 Ill. 225, [79 Am. Dec. 371], it is held, as stated in the syllabus: "An attorney who is requested to prepare a deed or mortgage, no legal advice being required, is 'not privileged and may testify as to what comes to his knowledge in connection with such a transaction."

In *Hebbard* v. *Haughian*, 70 N. Y. 61, the court of appeals declared that: "The objection that the attorney by whom the deed of April 4th was prepared could not give evidence of

the directions he received from the parties and of the transaction between them at the time was not well taken. He testified of facts within his knowledge, acquired in the transaction of the business between the parties, and they were not communicated to him as an attorney to enable him to perform his duties to a client. Knowledge acquired under such circumstances is not within the class of privileged communications.''

The material question here was whether at the end of said transaction an instrument in writing was executed by Jacobs, and if so, what were its contents. The only disputed point, indeed, was as to what it contained, and if it had not been lost the instrument would speak for itself. Having been lost its existence and contents could be proved by any witness who had read the assignment. (*Greer* v. *Greer,* 58 Hun, 254, [12 N. Y. Supp. 778]; *Chapman* v. *Peebles,* 84 Ala. 283, [4 South. 273].) ''It is a sound public policy which provides that an attorney or counsel should not be allowed to testify to any of the transactions or conversations between himself and his client which led up to the preparation of any document. But, when the document, be it a will or a contract or what not, has been executed, its contents are no longer confidential, the reason for the rule ceases, and the counsel may as well testify to the contents as may any other witness who knows such contents.'' (*Fayerweather* v. *Ritch,* 90 Fed. 13.) We think this position is sound and is amply sustained by the authorities, in this and other jurisdictions.

Appellants complain bitterly of the action of the court in reference to a transcript of testimony in the possession of respondent. They declare that the court denied to them the right to inspect it after it was actually introduced in evidence. They have, however, entirely misconceived the situation. Plaintiff had in his possession what purported to be a transcript of the testimony of Abe Jacobs taken in a certain proceeding in bankruptcy, and respondent read in evidence certain portions of it as containing admissions against interest. Appellants demanded an inspection of the transcript, but respondent declined to give them his copy for the reason that he had written upon it certain private notes that he had not erased. There is no claim made that respondent misread the quotation or that it was not a correct tran-

scription of said testimony of Mr. Jacobs. We must assume, also, that appellants could have secured a copy from the original source if they had so desired. Besides, on the request of appellants that the "whole record go in," with the exception of the testimony of a certain Mrs. Pyper which was claimed to be "fragmentary," the court said: "I expect that is probably the best course to take, to admit the whole, and then you gentlemen can call my attention to the other part. It will be admitted in evidence and marked as 'Plaintiff's Exhibit No. 8' and considered as read and hereafter counsel can refer to any part of it." Appellants claim that the "other part" was not called to the attention of the court, but if they neglected to do so they have only themselves to blame. After the said order was made appellants requested the court to "permit us to inspect the copy of that record that he has there," and the court replied: "After he has erased his notes. You do not want to see his notes on it, I presume." It does not appear whether appellants ever inspected that copy, but this circumstance seems unimportant in view of the fact that the whole deposition was received in evidence and is set out in full in the record.

Plaintiff offered in evidence all the papers, including the notice of motion for an order to be restored to possession, in the case of *Edward F. Delger* v. *Abe Jacobs,* No. 31,073, tried in the same court and decided in favor of plaintiff, September 2, 1910, his counsel stating in explanation: "There is a judgment against the defendant Abe Jacobs in this case, to the effect that the premises were leased by Delger to Jacobs, and he was in possession under the lease, and that judgment is, of course, an estoppel as to the material averment in his answer here, because he denies in his answer that he ever executed a lease." Appellants objected as follows: "We object to that, if the court please. We have asked to be restored to nothing but our estate there, and so distinctly provided, and we repudiated this lease in that suit, and we repudiate it in this." After said papers were received in evidence, appellants made the particular objection that "that case is on appeal and has not been finally decided, and is not a final judgment of the case, and ought not to be introduced as a part of this record and that it is incompetent, irrelevant and immaterial evidence." The objection

ought, of course, to have been made before the ruling of the court, but, since the record shows the payment by defendant Jacobs "of the sum of $1,388.50 in full payment, discharge and satisfaction of the judgment in said action," and the acknowledgment of satisfaction by plaintiff therein, it cannot be said that the action was still pending, and the cases cited by appellant are, therefore, not in point. As to this it is probably sufficient to quote section 1049 of the Code of Civil Procedure that "An action is deemed to be pending from the time of its commencement until its final determination upon an appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." As we have seen, the judgment *was satisfied* by Jacobs and hence the action was no longer pending. But if we concede that said judgment did not constitute an estoppel, it was, in connection with said satisfaction, at least evidence of an admission against interest upon a material issue and proper to be considered by the court. If it be admitted that the other defendants in the present action, being strangers to the former suit, might have urged successfully an objection to the consideration of said record as evidence against themselves or have maintained that it be limited in its application to Mr. Jacobs, it is sufficient to say that no such claim was presented to the trial court, and appellants are in no position now to make it and Mr. Jacobs is presumably satisfied, since he has not appealed.

The court did not err in excluding testimony tending to show a waiver on the part of the landlord of breaches of covenant under the lease. This claim was in the nature of an equitable estoppel, and it was necessary to plead it in order to introduce evidence in its support. (*Clarke* v. *Huber,* 25 Cal. 593; *Etcheborne* v. *Auzerais,* 45 Cal. 125; *Newhall* v. *Hatch,* 134 Cal. 273, [55 L. R. A. 673, 66 Pac. 266]; *Chapman* v. *Hughes,* 134 Cal. 641, [58 Pac. 298, 60 Pac. 974, 66 Pac. 982].) There is no pretense of such plea in the answer. An amendment to the answer was filed in which an attempt was made to plead estoppel as to certain covenants in the lease. This amendment was stricken out by the court. But if we were to consider it as a part of the pleadings, it is not contended that it covers the breach of the covenant not to assign, counsel for appellants having stated to the lower

court that "Under those circumstances, I did not understand that we were to plead against an assignment. We have not pleaded here against an assignment and we claim that there was no assignment."

The second count of the answer of defendant Jacobs contained allegations of fraud against plaintiff and then was a prayer for affirmative relief. It is urged that this constituted a cross-complaint and that the court's ruling was erroneous in sustaining an objection to evidence offered to support its averments. But, conceding that it stated a cause of action, it could only be so in behalf of Jacobs himself, and appellants are not aggrieved parties. They are not in any way connected with the purported cause of action, and therefore we are not called upon at their instance to review the alleged error.

Appellants say that "The court in its minute order holds the plaintiff entitled to judgment against all of the defendants for $650. In its findings it holds that plaintiff is entitled to judgment against all of the defendants except Melsted for $1,020. This is a distinction not justified by any reason, either in law or in evidence." The clerk's entry in the minutes is not the decision of the cause. "The decision upon which by section 633 of the Code of Civil Procedure the judgment is to be entered is that which by section 632 is to be given in writing and filed with the clerk; and until so given and filed there is no decision upon which judgment can be entered and consequently no authority for entering any judgment." (*Crim* v. *Kessing,* 89 Cal. 486, [23 Am. St. Rep. 491, 26 Pac. 1074].)

The value of the use and occupation of the premises for one month was $650, and the difference between that amount and $1,020 is accounted for by the fact that the court allowed plaintiff damages for the detention of the property to the date of the findings. This was proper. (*Nolan* v. *Hentig,* 138 Cal. 281, [71 Pac. 440].)

Justification for the judgment against the defendants other than Jacobs is urged by respondent on the ground that "under the statute providing for summary proceedings in unlawful detainer, persons may be made defendants who have entered upon or succeeded to the possession of the premises, from or through the tenant between whom and the landlord the conventional relation of landlord and tenant has

been established." It is claimed that said defendants are brought within this rule by reason of the fact that they were all in the possession of said premises by consent of the tenant and without the consent of the landlord. There is, probably, no doubt that all of said parties expected to be interested in the use and occupancy of said premises. We think, however, it can hardly be said that any of them except Jacobs and Moss were actually in possession of the property and liable for the value of its use. Mr. Moss testified that, in the beginning, "we expected to make a copartnership or an incorporation," but when he found he was the only one who had put up any money, he did not propose "to take Mr. Jacobs or Mr. Molsness in the partnership in a business for which I was paying and they had paid no money whatever." He testified further, substantially, that he discharged Mr. Jacobs, telling the latter "to go back to his tailoring business," and as "a matter of fact there is nobody interested in the actual ownership of the place but me and my word has been final in every case. There is absolutely not one dollar of anybody else's money in there but mine," and that he had "absolutely the right to exercise control over the place." Without quoting further, we think it should be held that, as far as the judgment awards damages and costs against Molsness and the Bristol Commercial Company and costs gainst Melsted, it should be reversed, and affirmed in every other respect. The necessity for a new trial, however, upon this issue can probably be avoided if plaintiff will consent to such modification of the judgment in the court below.

We think no other point demands specific attention.

In conclusion, it may be suggested that, while counsel in their briefs have displayed much industry and learning, they are justly subject to censure for their apparent forgetfulness of the dignity and courtesy that should ever prevail in contests like this. It must be manifest that their untoward vituperation affords no credit to themselves and likewise neither entertainment nor enlightenment to the court.

All of said judgment is affirmed except that portion which orders, adjudges and decrees that plaintiff have and recover from defendants, B. T. Molsness and the Bristol Commercial Company, the sum of $1,020 for the use and occupation of

said property and the sum of $100 for attorney's fee and $76 costs of suit, and except that portion which decrees that plaintiff recover said costs of $76 of defendant Melsted.

Hart, J., and Chipman, P. J., concurred.