[Civ. No. 4241.   Third Appellate District.—January 28, 1931.]

JOHN HOLAHAN et al., Respondents, v. CHARLES T. McGREW et al., Appellants.

Culver & Nourse for Appellants.

Frank H. Jaques and Fred E. Helwig for Respondent.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an appeal on the part of the individual members of C. T. McGrew & Sons, a copartnership, together with the partnership and the Commonwealth Building & Loan Association of Long Beach, from a joint and several judgment for damages for personal injuries sustained by Mrs. Holahan. Her injuries were caused by the dislodging of a cross-timber supporting a temporary canopy which was erected over a sidewalk for the protection of pedestrians pending the construction of a building at Long Beach.

The Commonwealth Building & Loan Association owns lots 2 and 4 of block 104 of the city of Long Beach, fronting 50 feet on Pine Avenue. The defendant, C. T. McGrew & Sons, a copartnership, was engaged in constructing a building on these lots. Pursuant to the provisions of a city ordinance which was in force, a canopy was built for the pro-

tection of pedestrians over the sidewalk in front of the building which was being erected on Pine Avenue. This canopy was constructed by placing upright timbers about eight feet in height along the borders of a fifteen-foot sidewalk. The outer timbers were flush with the curbing at the edge of the street. Cross-timbers were insecurely fastened with eight-penny nails at the top of these upright posts to support the roof of the canopy. These cross-timbers were permitted to protrude beyond the curbing over the paved street a distance of about eight inches. A portion of the space adjacent to the street beneath this canopy was reserved for the use of pedestrians. The defendant West Side Transit Company, a corporation, owned and operated a line of autobusses for transporting passengers to various parts of the city of Los Angeles. These busses were accustomed to stop every half hour of the day to receive and discharge passengers at the very point on Pine Avenue where this canopy had been constructed. About 3 o'clock in the afternoon of January 7, 1927, the respondent, Frances Holahan, with other passengers stood beneath this canopy waiting for the bus. Driving close to the curbing at this point, for the purpose of receiving passengers, the top of the autobus struck the protruding end of this timber, knocking it from the upright posts and dislodging other timbers. A plank two by twelve inches in size struck Frances Holahan, fracturing her shoulder and causing other bruises and contusions, from which she suffered great pain. She incurred considerable expense for hospital and medical treatment on account of these injuries. An action for damages was instituted against the owner of the property, the contractor and the company which operated the autobus line, as joint tort-feasors. The cause was tried with a jury. A verdict was rendered against the defendants for the sum of $4,724. A joint and several judgment was thereupon entered against each of the defendants, from which this appeal has been perfected.

These appellants contend that the complaint fails to state a cause of action against either of them; that the evidence fails to support the judgment, and that the court erred in instructing the jury with respect to the law of the case.

The appellants contend that the complaint fails to state facts charging them with negligence in the construction

of the canopy which proximately caused the accident. There is no merit in this contention. The complaint appears to be sufficiently specific. It first recites that, "said defendants . . . negligently and carelessly constructed said canopy so that portions thereof unnecessarily projected out over and obstructed the paved portion of said Pine Avenue traveled by vehicles, . . . ". The following paragraph then alleges: "The defendants . . . so carelessly and negligently constructed said canopy that vehicles traveling upon the paved portion of said Pine avenue came in contact with and struck said canopy, causing said canopy to be in a . . . weakened condition." In the next paragraph it is asserted that while the canopy was in this weakened and defective condition the defendant West Side Transit Company, by its agent, negligently operated one of its busses so that it "came in contact with and struck said canopy, causing said canopy to collapse and said heavy timbers to fall with great force upon plaintiff. . . ."

It is true that the real defect which caused the accident was the cross-timber which extended beyond the curbing. These protruding timbers were a part of the frame which supported the canopy. The top of the bus came in contact with one of these protruding timbers, knocking it from its support and dislodging from the canopy other planks, one of which struck and injured Mrs. Holahan. There is evidence that this cross-timber which was struck and dislodged by the bus was merely nailed to the upright posts with two eight-penny nails. There is no evidence that other machines had previously struck this canopy and thus weakened it. ▮ The real negligence which appears to have caused the accident and upon which the plaintiffs rely in support of the judgment is the insecure manner in which the cross-timber was nailed to the upright posts, and the fact this timber was permitted to extend beyond the curbing. This was the very point where the busses were accustomed to stop for passengers. The contractor should have anticipated the danger of protruding timbers.

It will be observed the first paragraph above quoted specifically charges the negligent construction of the canopy so as to permit "portions thereof" to project out over the traveled part of the street. The second paragraph above quoted, which refers to the weakened condition of the canopy

caused by machines striking it, may be disregarded as surplusage. It is harmless. The third paragraph specifically charges that the bus of the defendant West Side Transit Company "came in contact with and struck the canopy causing . . . heavy timbers to fall with great force upon plaintiff". The protruding timber was a part of the canopy. The complaint might have been more specific in stating just what part of the canopy the bus struck to cause the falling of the timbers. The allegations of the complaint were, however, sufficiently specific in the absence of a special demurrer on the ground of uncertainty. ■ A demurrer was filed in which it was averred that the complaint was "ambiguous and uncertain". But no specific uncertainty was charged. The appellants therefore waived the right to complain for the first time on appeal that the complaint fails to specifically state the exact part of the canopy which was struck by the bus.

■ If the allegations of the complaint are uncertain in this regard, that precise issue was tendered and the defect was cured by the allegations of the answer. An amendment to the answer was filed by leave of court. It avers: "These answering defendants deny that they negligently or carelessly constructed or maintained the canopy . . . or *that portions thereof* unnecessarily or otherwise *projected out, over and obstructed the paved portion of the said Pine avenue,* . . . (so) that plaintiffs were injured or damaged." Moreover the case was tried on the theory that the dislodging of the protruding timber was the proximate cause of the accident.

■ Even though the allegations of a complaint may be defective regarding the facts constituting the proximate cause of accident, when the uncertainty is not raised by demurrer, but on the contrary, the issue is clearly tendered by the averments of the answer, and the case is tried upon that theory, the judgment will not be reversed on appeal for such defect for the reason that the defendants are not prejudiced thereby. (*Oles* v. *Kahn Bros.,* 81 Cal. App. 76 [253 Pac. 158]; *Martin* v. *Pacific Gas & Elec. Co.,* 203 Cal. 291, 298 [264 Pac. 246]; 21 Cal. Jur. 280, sec. 195.)

· ■ Since there is no miscarriage of justice in the present case, the provisions of article VI, section 4½, of the Con-

stitution will also cure the technical defect of which the appellants complain.

It is claimed the evidence fails to support the judgment. It must be conceded there is no substantial evidence indicating that a general defective or weakened condition of the canopy caused the accident. There is, however, ample evidence to sustain the implied finding of the jury that the cross-stringers were attached to the upright posts so as to permit them to protrude beyond the curbing over the paved portion of the street a distance of about eight inches, and that the dislodging of one of these timbers by contact with the bus caused the injuries which were sustained by Mrs. Holahan.

Mr. Virgil Abbott, who drove the bus of the defendant West Side Transit Company at the time of the accident, testified: "I struck a timber on the canopy there and knocked it down. Q. Where did that (timber) come in contact with the bus? A. Right at the top of the door. . . . About two inches," from the top of the door. "It (the timber) was a 2x4 nailed onto 4x4 upright . . . posts. . . . They (the posts) were around close to the curb line. . . . It (the cross-timber) was fastened to the 4x4 post with two eight-penny nails. . . . Q. What distance would you say that 2x4 projected, . . . ? A. Seven or eight inches, I guess. . . . Q. Did you see any boards fall upon Mrs. Holahan, a timber? A. I didn't exactly see them fall, on her, no, but I know they came down. . . . She wasn't knocked down. . . . Q. When you approached this stop on that occasion, do you recall whether or not the cross-piece you have described was at the point where you usually stop for passengers? A. Right at that place, yes. . . . Q. Did you see any evidence there of that timber having come in contact with the door? A. Yes. . . . I seen a little piece of wood sticking up there where it hit the door and a little paint scraped off."

Margaret Maes, who was a stranger to Mrs Holahan, testified that she observed the accident. She said: "I saw the bus driving up there. . . . Just as he drove past I heard a noise like a grinding or a scraping. I looked up and saw a timber sticking out and the friction of the bus moved that timber. . . . I saw what appeared—really looked like two boards. I think it must have been two boards falling down,

. . . I saw the bus striking that timber, and moving that timber caused the sliding of some boards. . . . I saw the . . . timber sticking out as it struck the bus. Q. How far did that stick out from the post? A. . . . About seven inches at least. . . . Q. How high was it from the walk? . . . A. Oh, perhaps eight feet. The carpenter sawed it off afterwards."

Mr. Rickard, a patrolman in the police department of the city, testified: "I think there were several planks sticking out in the street. . . . One in particular I noticed was (protruding) about two feet. . . . Q. How high was that from the pavement? . . . Q. A. About even with the top of the ordinary bus. . . . Q. How far were they projecting out in the street? . . . A. About eight inches, such a matter. . . . One (of these cross-timbers) was knocked down."

Pearl Poe, a carpenter who was working on the canopy at the time of the accident, testified: "I was working on the north end of canopy, on the top of same, when the bus struck the canopy, the top of bus leaning in struck upright post *and cross-piece,* knocking cross-piece out at one end. . . . I saw the scaffold board one end (of which) was on cross-piece that (the) bus struck, slide down the same and strike an old lady on the head." The foregoing evidence adequately supports the judgment in spite of the conflict which exists regarding some of these facts.

█ The appellants contend that the court erred in admitting, over their objection, evidence of the fact that other similar cross-timbers of this canopy also protruded beyond the curbing. The objection that this evidence is immaterial was raised only on one occasion when the witness Abbott, who drove the bus, was asked generally if he did not observe "the condition of the canopy, such as any timbers projecting out into the street". Several other witnesses testified without objection that other cross-timbers extended beyond the curbing. Mrs. Maes and Mr. Rickard so testified. These witnesses were thoroughly cross-examined by the defendants on this subject. There was no effort on the part of the appellants to preserve this objection in its application to other witnesses, nor to confine it to any particular defendant. We are of the opinion this evidence of other similar protruding cross-timbers in the same canopy was competent and material, at least, so far as it applies to the

alleged negligence of the agent of the West Side Transit Company. The entire canopy was one structure. The roof was supported by upright posts set along the curbing a few feet apart. At the tops of these upright posts these protruding cross-timbers were nailed. The question as to whether the particular cross-timber, with which the bus came in contact, extended beyond the curbing, was the vital issue of the case. Abbott, the driver of the bus, denied that he saw the protruding end of this timber with which he came in contact before his machine struck it. If other similar protruding timbers of the same structure were plainly visible to the driver of an approaching vehicle there is greater reason to assume that a cautious driver should have seen that particular timber. The more numerous these protruding timbers, the greater likelihood there would be that the driver of an approaching vehicle should have seen and avoided the danger. The evidence of the presence of other similar protruding timbers in the immediate vicinity was competent to show that a reasonably prudent driver should have observed them and anticipated the danger of coming in contact with one at the very point where he proposed to stop his machine.

█ Moreover, having permitted other witnesses to testify to the same facts without objection, the evidence became harmless. (2 Cal. Jur. 1020, sec. 607; *Bower-Venus Grain Co.* v. *Smith,* 84 Okl. 105 [204 Pac. 265]; 3 C. J. 815, sec. 730.) In the authority last cited, it is said: ''Appellant cannot complain of the admission of evidence over his objection, where evidence of the same tenor was admitted without objection.''

█ Assuming, without so determining, that the challenged evidence regarding the protruding of cross-timbers other than the particular one which caused the accident was competent only against the defendant West Side Transit Company, the other defendants may not complain for the reason there was no request to thus limit the application of the testimony. Evidence may be incompetent as to one of several joint tort-feasors and competent as to others. If such evidence is competent as to any one of several defendants to the same action, it is admissible, and a general objection to its competency is not available on appeal to any party to the action in the absence of timely application

to limit it to the party against whom it is competent. (3 C. J. 823, sec. 733; Wigmore on Evidence, 2d ed., p. 159, sec. 13; *Delger* v. *Jacobs,* 19 Cal. App. 197 [125 Pac. 258]; *Outlook Farmers' Elevator Co.* v. *American Surety Co.,* 70 Mont. 8 [223 Pac. 905, 911].)

We find no reversible error in the giving of certain instructions with relation to a public nuisance. The jury was charged in effect that any structure which projected over a public street so as to interfere with travel constituted a public nuisance, and that in the absence of legal authority no one had a right to construct or maintain such an obstruction. The jury was further instructed that the maintenance of such an illegal obstruction to a public street would constitute negligence *per se,* but that "Negligence, whether it is a violation of a law, or whether it is any other kind of negligence is of no consequence unless you find such negligence was the proximate cause of the injury." These instructions appear to correctly state the law. Possibly they serve no useful purpose in this case, since the plaintiffs were not relying upon proof of a public nuisance to establish negligence *per se,* but were relying upon proof of the maintenance of cross-timbers of the canopy which overhung the street so as to come in contact with the bus. If the maintenance of this protruding cross-timber became the proximate cause of the accident and Mrs. Holahan was free from contributory negligence, she was entitled to recover damages which resulted from that unwarranted situation, whether that portion of the canopy which overhung the street constituted a public nuisance or not. There was evidence that these cross-timbers did overhang the street a distance of at least eight inches and that one of them was struck and dislodged by the bus. The jury was fully and fairly instructed regarding the doctrine of contributory negligence and every other issue in the case. These instructions were harmless. They were certainly not prejudicial and do not constitute reversible error.

It is also claimed prejudicial error resulted from an instruction which was given to the jury interpreting the provisions of a city ordinance with respect to the construction of the canopy over the sidewalk in its relation to a lamp-post which was situated in the outer portion of the walk near the curbing. This contention is without merit.

The ordinance was construed by the court as favorable to the defendants as they were entitled to have it interpreted. The jurors were also clearly charged that even though they found that the ordinance had been violated and that such violation constituted negligence *per se,* they must further find that the failure to conform to the ordinance was the proximate cause of the accident before they were warranted in finding a verdict for the plaintiffs. This was a correct statement of the law. The giving of this instruction was therefore not erroneous. The ordinance contained this clause: "Canopies . . . shall be placed and maintained in the outer portion of the space between the property line and the curb and inside of any public utility poles, lamp posts or trees adjacent to the building site." After quoting the preceding clause the court said: "By this latter provision . . . it is meant that that portion of such canopy which would be next to any pole, lamp post or tree standing in such sidewalk adjacent to such building site must be placed inside such pole, lamp post or tree, and on the outer portion of the space between the property line and such pole, lamp post or tree, and that all other portions of such canopy must be placed on the outer space between the property line and the curb. . . . " This construction of the ordinance clearly means that in the immediate vicinity of a point where a power pole, lamp-post or tree intervenes between the property line and the curbing, the canopy must not extend toward the curbing beyond such object, but must be confined to the space between the property line and the pole or lamp-post and that the remaining portion of the walk not so obstructed by a pole or post must be covered with a canopy extending from the property line to the curbing. The uncontradicted evidence shows this is the very manner in which the canopy was constructed. At the only point where a lamp-post stood the canopy was cut out from the curbing so that it did not extend beyond the post. This is the construction of the ordinance contended for by the appellants in another instruction which was offered by them and rejected. There was no error in rejecting this last-mentioned instruction for the reason it is fully covered by the preceding charge.

For the same reason there was no error in refusing to permit the defendants to offer evidence that this was the

construction placed upon the ordinance by the agents of the city. The court accepted the defendants' construction of the ordinance and charged the jury accordingly. Whether this construction of the ordinance is correct or not, the appellants may not complain.

While it is true that a violation of this canopy ordinance would constitute negligence *per se* (*Martin* v. *Shea,* 182 Cal. 130 [187 Pac. 23]; 45 C. J. 723, sec. 105), the violation of the ordinance would not be actionable unless it also constituted the proximate cause of the accident. (*Henderson* v. *Northam,* 176 Cal. 493 [168 Pac. 1044]; *Michael* v. *Key System Transit Co.,* 98 Cal. App. 189 [276 Pac. 591]; 45 C. J. 902, sec. 479.) In the text of Corpus Juris last cited, it is said: "The rule that no liability attaches unless the negligent act or omission was the proximate cause of injury is applicable where the act or omission complained of constituted a violation of some statute or ordinance, even though such violation is held to be negligence *per se.*"

It was the province of the jury to determine whether there was a violation of the canopy ordinance and if so, whether such violation was the proximate cause of the accident. (*Baillargeon* v. *Myers,* 180 Cal. 504 [182 Pac. 37]; 19 Cal. Jur. 734, sec. 140.)

In the present case there was no contention on the part of the plaintiffs that the appellants were guilty of negligence on account of the mere violation of the ordinance in extending the canopy to the curb line without regard to the intervening lamp-post, or in cutting out the canopy at the point where the lamp-post stood. The appellants were therefore not prejudiced by the giving or refusing of instructions on this subject.

Finally objection is made to an instruction which was given to the jury regarding the elements of damages which might be considered by them in the event they found that the plaintiffs were entitled to recover. Among other elements of compensation the jury was charged that: "In estimating the amount of such damages you may consider . . . such cost of sanitarium treatment and care which it is reasonably certain that they (the plaintiffs) may sustain hereafter, if any, not exceeding $1,000.00." While it is true there is some evidence to support the plaintiffs' claim

that Mrs. Holahan was permanently injured as a result of the accident and that "her nervous system has been practically wrecked", there is no evidence to indicate that future medical treatment or hospital services would aid her condition. Nor is there any evidence of the probable cost of such future care and treatment. Under the foregoing instruction with respect to damages we must assume the jury may have included in their general verdict of $4,724 the maximum sum of $1,000 to cover the cost of future medical care and treatment. To that extent the judgment is not supported by the evidence. There is no means by which this court is able to determine what sum the jury allowed as compensation for future treatment. We must therefore assume they may have allowed the maximum sum of $1,000, which the court instructed them they were authorized to award.

The respondents suggest this court has the discretion to modify the judgment in this respect. The judgment is accordingly modified by striking therefrom said sum of $1,000. As so modified, the judgment for the remaining sum of $3,724 is affirmed. The appellants may recover only one-half of their costs.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 27, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1931.