OUTLOOK FARMERS' ELEVATOR CO., Respondent, *v.* AMERICAN SURETY COMPANY OF NEW YORK et al., Appellants.

(No. 5,338.)

(Submitted January 15, 1924. Decided February 18, 1924.)

[223 Pac. 905.]

*Suretyship—Agency—Gambling in Grain—Ratification—Evidence—Insufficiency—Appeal and Error—Record—Pleadings—Theory of Case—Trial—Joint Objections to Evidence—Instructions.*

New Trial—Failure of Court to Act on Motion Within Statutory Time—Appeal.
   1. Failure of the trial court to pass upon a motion for new trial within fifteen days declared by section 9400, Revised Codes of 1921, to be equivalent to a denial of the motion, is not reviewable on appeal.

[70 Mont. 8.]

Appeal and Error—Overruling Demurrer—Correct Ruling—Wrong Reason.

2.  If an order overruling a demurrer was correct it is immaterial that the reason which prompted it was erroneous.

Same—Trial Court's Memorandum Opinion not Part of Record.

3.  A memorandum opinion by the trial court giving its reasons for a decision or order is not properly a part of the record and cannot be considered for any purpose on appeal.

Same—Complaint—When Sufficient.

4.  Where a complaint states a cause of action upon any theory it will be sustained on appeal.

Same—Theory of Case.

5.  The rule that a party may not adopt one theory of the case in his complaint and recover upon another, or adopt one theory in the trial court and insist upon a different one on appeal, is not affected by the provision of section 9316, Revised Codes of 1921, that the district court may grant plaintiff any relief consistent with his complaint and fairly embraced within the issues.

District Courts—Trial—Presiding Judge not Bound by Opinion of Another Judge as to Theory of Case.

6.  A district judge who presides at the trial of a cause is not bound by an opinion expressed by another judge in passing upon a demurrer to the complaint, as to the theory upon which plaintiff could recover, but may put his own construction upon the pleadings.

Principal and Agent—Ratification of Unauthorized Act of Agent—Essentials.

7.  Before a principal may be said to have ratified an unauthorized act of his agent, it must be shown that the former accepted the results of the act of the latter with the intent to ratify and with full knowledge of all the material circumstances.

Same—Suretyship—Misappropriation of Funds—Grain Gambling—Ratification by Employer—Insufficiency of Evidence.

8.  In an action by an elevator company against its former manager and his surety to recover for funds misappropriated by him in grain gambling transactions, refusal of the court to submit the question of ratification of the manager's acts by the company was proper, where it appeared that the gambling transactions were carried on with a commission house in Minneapolis under fictitious names which made reports to the manager so drawn as to conceal their real character, and that the directors of the company did not know of their existence until after the termination of the manager's employment who had informed them that he was not gambling.

Same.

9.  Where the by-laws of an elevator company provided that the buying and selling of options or futures should be limited to the hedging of grain actually on hand or contracted for at a definite price, the claim of its manager charged with misappropriation of its funds in grain gambling that he had informed the president of the company of his closing out "a few options" was insufficient to impute knowledge to the president that he was engaged in gambling as distinguished from the dealing in options authorized by the by-laws, and therefore insufficient to show ratification of his acts.

---

7.  Ratification by corporation of unauthorized contract entered into by officer, by acceptance and retention of benefits, see note in 7 A. L. R. 1446.

Same—Relation One of Trust—Principal not Chargeable With Negligence for Failing to Search Records for Evidence of Agent's Wrongdoing.

10. The relation of principal and agent is essentially one of trust and confidence, and the directors of a corporation have the right to rely upon the fidelity of its manager until they obtain knowledge to the contrary, and are not chargeable with negligence in failing to search the records for evidence of his duplicity.

Same—Ratification—Offers of Proof—Proper Rejection.

11. Offers of proof in an effort to show that plaintiff elevator company knew of its manager's grain gambling transactions and had ratified his acts, accepting the profits flowing from them, *held* properly rejected as too indefinite or as showing transactions authorized under its by-laws and, though speculative in character, not open to the charge that they constituted gambling in grain.

Principal and Surety—Notice to Surety by Employer of Loss Sustained—Employer not Required to Act upon Suspicions of Wrongdoing.

12. While the provision of a surety bond requiring the employer to give notice to the surety company within ten days after discovery of losses sustained by the misconduct of his employee is valid, and unless waived, must be complied with as a condition precedent to recovery upon the bond, the employer need not act until he has knowledge of the existence of such facts as would justify a careful and prudent man in charging the employee with wrongdoing, mere suspicion thereof by the employer being insufficient.

Same—Declarations of Principal After Default—Admissibility.

13. *Quaere:* Are declarations of the principal made after his default and after the termination of his employment covered by a surety bond admissible as against the surety.

Evidence—If Admissible for Any Purpose, Exclusion Improper.

14. While evidence may be admissible for a special purpose but not admissible generally; or admissible for one purpose but not for another, or admissible against one joint defendant but not against another, if offered evidence is properly admissible for any purpose it may not be excluded.

Same—Joint Objection—When Properly Overruled.

15. A joint objection to be available must be well taken as to all the parties who join in it; and if evidence is admissible against one party though not against another joined with him, their joint objection should be overruled.

Same — Codefendants — Evidence Admissible as to One Defendant and Inadmissible as to Other—Failure to Ask for Instruction Limiting Effect—Appeal.

16. Where in an action against a principal and his surety declarations of the former were admissible as to him but inadmissible as to the latter, failure of the surety to request an instruction that such evidence should be limited in its application to the principal barred the surety from complaining of the court's ruling admitting the evidence over objection.

Appeal and Error—Instructions—Supreme Court Limited in Review to Objections Made on Settlement.

17. Under section 9349, Revised Codes of 1921, the supreme court in its review of instructions is limited to the objections made by

---

12. Discharge of surety on fidelity obligation by failure of employer to discover delinquency or to notify surety thereof within the time specified on the obligation, see notes in 11 **Ann. Cas.** 1031; **Ann. Cas.** 1912D, 1286; **L. R. A.** 1916F, 715.

[70 Mont. 8.]

counsel for appellant at the time they were settled; hence though an instruction may be incorrect but not open to ·the particular objection urged against it, the court may not declare error on that account.

*Appeal from District Court, Sheridan County in the Twentieth Judicial District; Stanley E. Felt, a Judge of the Sixteenth District, presiding.*

ACTION by the Outlook Farmers' Elevator Company, a corporation, against the American Surety Company of New York, a corporation, and Oscar J. Brown. Judgment for plaintiff and defendants appeal. Affirmed.

Cause submitted on briefs of Counsel.

*Mr. S. E. Paul* and *Mr. Alfred T. Vollum,* for Appellants; *Messrs. Fowler, Carlson, Furber & Johnson,* of the Bar of Minneapolis, Minnesota, and *Mr. H. A. Libby,* of the Bar of Grand Forks, North Dakota, of Counsel.

Respondent was bound by its pleading limiting the recoverable loss to that resulting from fraudulent dealings on Brown's part, with intent to himself profit thereby, and failed in its proof thereof. That a plaintiff is bound by the theory of its case, as limited in its pleadings, is shown by the following cases, and the trial court having determined and pointed out the theory on which the pleading rested, respondent cannot recover upon a theory other than the one upon which the pleading proceeds. (*Evansville etc. R. Co.* v. *Barnes,* 137 Ind. 306, 36 N. E. 1092; *Minor, Read & Garrette* v. *McNamara,* 82 Conn. 578, 74 Atl. 933; *Montesano Lumber & Mfg. Co.* v. *Portland Iron Works,* 78 Or. 53, 152 Pac. 244; *Schwindt,* v. *Lane Potter Lumber Co.,* 40 Mont. 537, 135 Am. St. Rep. 639, 107 Pac. 818; *Wing* v. *Brasher,* 59 Mont. 10, 194 Pac. 1106.)

The appellant American Surety Company of New York, joint defendant with Brown below, is not bound by alleged admissions or statements not constituting a part of the *res gestae,* made by Brown long after the occurrence of the events

to which they relate, and since there is an absence of other proof of actual conduct resulting in losses chargeable to its bond, the verdict against it must be reversed. (Greenleaf on Evidence, 16th ed., sec. 187; *Hatch* v. *Elkins,* 65 N. Y. 489; *Lee* v. *Brown,* 21 Kan. 458; *Knott* v. *Peterson,* 125 Iowa, 404, 407, 101 N. W. 173; *Wieder* v. *Union Surety & G. Co.,* 42 Misc. Rep. 499, 86 N. Y. Supp. 105; *Shelby* v. *Governor, etc.,* 2 Blackf. (Ind.) 289; *Lewis* v. *Lee County,* 73 Ala. 148; *Chelmsford Co.* v. *Demarest,* 7 Gray (Mass.), 1; *Tenth Nat. Bank* v. *Darragh,* 3 Thomp. & C. (N. Y.), 138.)

The courts have held that hedging transactions are legitimate insurance against loss in the grain trade, and in view of the by-law of respondent corporation Brown was clearly authorized to engage in hedging trades. (*Cleage* v. *Laidley,* 149 Fed. 346, 77 C. C. A. 284; *Board of Trade* v. *Christy Grain & Stock Co.,* 198 U. S. 236, 49 L. Ed. 1031, 25 Sup. Ct. Rep. 637 [see, also, Rose's U. S. Notes]; *State* v. *McGinnis,* 138 N. C. 724, 51 S. E. 50; *John Miller Co.* v. *Klovstad,* 14 N. D. 435, 105 N. W. 164, 165.)

No recovery can be had for losses suffered by respondent based on transactions to which its consent was first given or that were adopted or acquiesced in by it and benefits accepted and retained thereunder. It is a well-settled rule that where one having the right to accept or reject a transaction takes or retains benefits thereunder, he ratifies the transaction, is bound by it and cannot avoid its obligation or effect by taking a position inconsistent therewith. (21 C. J. 1206; *Trenton First Nat. Bank* v. *Badger Lumber Co.,* 54 Mo. App. 327; *In re Wrexham etc. R. Co.,* 1 Ch. 440; *Union Gold Mining Co.* v. *Rocky Mountain Nat. Bank,* 96 U. S. 640, 24 L. Ed. 648 [see, also, Rose's U. S. Notes]; *Allen* v. *Olympia Light etc. Co.,* 13 Wash. 307, 43 Pac. 55; *Wisconsin Lumber Co.* v. *Greene & W. Tel. Co.,* 127 Iowa, 350, 109 Am. St. Rep. 387, 69 L. R. A. 968, 101 N. W. 742; *Hudson* v. *Seeley Specialties Co.,* 19 Cal. App. 213, 124 Pac. 1051; *J. K. Siphon Ventilator Co.* v. *Hutton,* 116 Ark. 545, 175 S. W. 30; *Jones* v. *N. Y. Guaranty &*

*Indemnity Co.,* 101 U. S. 622, 25 L. Ed. 1030 [see, also, Rose's U. S. Notes].)

No recovery can be had on the bond because respondent failed to comply with the express condition thereof, requiring that notice in case of loss be delivered to the surety company at its home office in the city of New York within ten days after such discovery, and such failure resulted in prejudice to the latter. (*Riddlesbarger* v. *Insurance Co.,* 7 Wall. (U. S.) 386, 390, 10 L. Ed. 257 [see, also, Rose's U. S. Notes] ; *California Sav. Bank* v. *American Surety Co.,* 87 Fed. 118; *Los Angeles Athletic Club* v. *United States Fidelity & Guaranty Co.,* 41 Cal. App. 439, 183 Pac. 174.)

*Mr. Howard M. Lewis* and *Mr. James G. Wagner,* for Respondent.

Bonds of indemnity are to be construed most strongly against the surety company.    (14 R. C. L. 47; *Ballard County Bank* v. *United States Fidelity & Guaranty Co.,* 150 Ky. 236, Ann. Cas. 1914C, 1208, 150 S. W. 1; *Ramel* v. *American Bonding Co.,* 112 Minn. 288, 33 L. R. A. (n. s.) 513, 128 N. W. 12; *Bank of Tarboro* v. *Fidelity & C. Co.,* 126 N. C. 320, 83 Am. St. Rep. 682, 35 S. E. 588; 128 N. C. 366; *American Surety Co.* v. *Pauly,* 170 U. S. 133, 42 L. Ed. 977, 18 Sup. Ct. Rep. 552 [see, also, Rose's U. S. Notes] ; *Fairbanks Canning Co.* v. *London Guaranty & Accident Co.,* 154 Mo. App. 327, 133 S. W. 664; *National Surety Co.* v. *Williams,* 74 Fla. 446, 77 South. 212; *Delaware State Bank* v. *Colton,* 102 Kan. 365, 170 Pac. 992; *Fidelity & Casualty Co. of New York* v. *Blount Plow Works* (Ind. App.), 136 N. E. 559.)

Directly in point, and squarely controverting appellants' contentions that proof of fraud or crime is required to establish the liability of the defendant surety company, see the case of *Delaware State Bank* v. *Colton,* 102 Kan. 365, 170 Pac. 992, in which case the supreme court of Kansas held, even upon a bond such as is issued by the United States Fidelity & Guaranty Company, indemnifying only against loss

occasioned by fraud and dishonesty amounting to crime, that proof of embezzlement or larceny is not required. (See, also, *McIntyre* v. *American Surety Company of New York*, 97 Kan. 629, 156 Pac. 690; *Mitchell Grain & Supply Co.* v. *Maryland Casualty Co. of Baltimore*, 108 Kan. 379, 16 A. L. R. 1488, 195 Pac. 978; *Delaware State Bank* v. *Colton*, 102 Kan. 365, 170 Pac. 992; *Vilm Milling Co.* v. *Kansas Casualty & Surety Co.*, 104 Kan. 790, 180 Pac. 782.)

Brown and the surety company being joint defendants, Brown's declarations and admissions are admissible. (*Amherst Bank* v. *Root*, 42 Mass. (2 Met.) 522; *Brown* v. *Munger*, 16 Vt. 12; *Parker* v. *State*, 8 Blackf. (Ind.) 292; *Magner* v. *Knowles*, 67 Ill. 325; *Singer Mfg. Co.* v. *Reynolds*, 168 Mass. 588, 60 Am. St. Rep. 417, 47 N. E. 438; *Great Western Life Assur. Co.* v. *Shumway*, 25 N. D. 268, 141 N. W. 479; *Brite* v. *Atascosa County* (Tex. Civ.), 247 S. W. 878; *Hall* v. *United States F. & G. Co.*, 77 Minn. 24, 79 N. W. 590.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

From November, 1913, until August, 1917, the Farmers' Elevator Company of Outlook employed Oscar J. Brown as its manager in the business of buying, selling and storing seed and grain. To secure the faithful performance of his duties, Brown gave to the elevator company a fidelity bond in the sum of $3,000, with the American Surety Company as surety. By the terms of the bond Brown as principal, and the surety company as surety, promised to reimburse the elevator company for such losses of money or other personal property, not exceeding $3,000, as it might suffer by reason of any acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or misapplication on the part of Brown during his employment. This action was instituted to recover for losses alleged to have been suffered by the elevator company through the wrongful acts of Brown in his capacity as manager. Specifically, the charge is made that from October 1, 1916, to

February 15, 1917, in violation of his duties and the by-laws of the elevator company, Brown engaged in purchasing and selling options and futures under such circumstances as constituted the transactions gambling in grain; that the transactions were conducted in the name and upon the credit of the elevator company, with the result that funds of the elevator company to the extent of $6,973.88 were lost.

The defendants answered separately, but each answer contains the admission that Brown did engage in buying and selling options and futures in violation of the by-laws of the elevator company, and that losses resulted from some of these transactions. An affirmative defense was interposed which will receive consideration later. Issues were joined by reply. Upon the trial of the cause plaintiff prevailed. Defendants have appealed from the judgments, and have attempted to appeal from the order denying their motion for a new trial. Likewise they seek to bring before this court for some sort of review the action of the trial court in failing to pass upon the motion for a new trial.

Section 9400, Revised Codes of 1921, provides that, if the [1] court shall fail to pass upon a motion for a new trial within fifteen days after the same is submitted, it is deemed denied. The statute declares the consequences of the court's inaction, but the failure of the court to act is not subject to review.

By section 9745, Revised Codes of 1921, appeals from orders denying new trials are abolished, but all questions formerly reviewable on an appeal from an order denying a new trial are now subject to review in appeal from the judgment.

While the complaint contains superfluous matter, it is not open to the attacks made upon it by special demurrer. The sufficiency of the complaint to state a cause of action has not been and is not now challenged.

Defendants make eighty assignments of error, but these are grouped for the purpose of discussion, and three principal contentions are advanced:

1. It is insisted that plaintiff could recover only upon the [2–6] theory that the losses resulted from acts of fraud perpetrated by Brown, and that the evidence fails to make out a case of fraud. It is sought to justify this theory of limited liability by reference to a memorandum filed by the trial court, Judge Hurley presiding, when the separate demurrers to the complaint were overruled. In that memorandum Judge Hurley expressed the opinion that the complaint would admit of recovery only upon the theory that plaintiff's losses resulted from "the fraudulent dealings of the defendant Oscar J. Brown as alleged in paragraph 10 of plaintiff's complaint." When the demurrers were submitted, the court was called upon to sustain or overrule them, and, if the order overruling them was correct, it is altogether immaterial what reason may have prompted it. (*Brown* v. *Daly,* 33 Mont. 523, 84 Pac. 883; *City of Butte* v. *Goodwin,* 47 Mont. 155, Ann. Cas. 1914C, 1012, 134 Pac. 670.) Judge Hurley's memorandum is not properly a part of the record, and cannot be considered for any purpose. (*Phillips* v. *Coburn,* 28 Mont. 45, 72 Pac. 291.) Assuming that the complaint states a cause of action upon any theory, it will be sustained (*Grover* v. *Hines,* 66 Mont. 230, 213 Pac. 250), and the trial court was authorized to grant to plaintiff any relief consistent with it and fairly embraced within the issues (sec. 9316, Rev. Codes 1921). The statute just cited does not impinge in the least upon the general rule which prevails in this jurisdiction, and elsewhere, that a plaintiff may not adopt one theory of the case in his complaint and recover upon another, or adopt one theory in the trial court and insist upon another in the appellate court. However, the memorandum filed by Judge Hurley did not establish a theory binding upon the plaintiff or fix the law of the case. Judge Felt, who presided at the trial of the cause, was free to put his own construction upon the pleadings, notwithstanding Judge Hurley's previously expressed opinion. (15 C. J. 963, sec. 359.)

As we interpret the language of the complaint, plaintiff proceeded upon the theory that the transactions carried on

by Brown in dealing in options and futures were of such char-
.acter as to constitute them gambling transactions prohibited
by his employment and by the express provisions of the ele-
vator company's by-laws; that the use of the elevator com-
pany's money or other personal property to carry on such
transactions constituted a misapplication of such property;
and that the resulting losses are recoverable under the terms
of the bond. It appears to us from the record that the theory
thus adopted has been adhered to consistently, and that under
that theory the right of the plaintiff to recover cannot be
questioned.

2. As an affirmative defense each of the defendants alleged
[7, 8] in effect that during 1915 and 1916, and until the ter-
mination of his employment, Brown engaged in dealing in
options and futures in violation of the by-laws; that in such
transactions large profits were realized from time to time; that
with full knowledge of the character of such transactions and
the source of the profits plaintiff accepted and distributed them
to its stockholders as dividends, and thereby ratified Brown's
acts and ought not now to be heard to repudiate such of the
transactions as resulted in losses. It is insisted that there is
some evidence in the record tending to support this defense,
but, notwithstanding the fact, the court refused to submit the
matter to the jury. The principal contention upon this branch
of the case, however, is that the court erred in refusing to
admit evidence which it is claimed would have established
the defense.

The principle for which defendants contend is expressed in
section 7940, Revised Codes of 1921, as follows: "A ratification
can be made only in the manner that would have been neces-
sary to confer an original authority for the act ratified, or
where an oral authorization would suffice, by accepting or re-
straining [retaining] the benefit of the act, with notice
thereof." In referring to the provisions of the section just
quoted, this court, in *Koerner* v. *Northern Pac. Ry. Co.*, 56
Mont. 511, 186 Pac. 337, said: "To constitute a ratification
there must be an acceptance of the results of the act with an

intent to ratify and with full knowledge of all the material circumstances.''

The record discloses that the alleged gambling transactions which resulted in the losses sought to be recovered in this action were conducted by Brown through a commission house in Minneapolis, many of them in purely fictitious names, and that the commission house rendered monthly reports to the elevator company. It is insisted that, since the reports for 1916 and 1917 were received by the elevator company, became a part of its office records, were open to the inspection of its officers and directors, and disclosed the character of Brown's transactions, they impute knowledge of their contents to the plaintiff, whether they were ever actually inspected or not.

Assuming, as we may, that Plaintiff's Exhibits 1 to 12 are copies of the monthly reports submitted by the commission house, we observe that, while it may be true that to one familiar with grain gambling transactions these reports disclosed Brown's illegal operations, to the members of this court they have no such effect, and the record discloses that the officers and directors of the elevator company could not understand them, when they were received after Brown's employment terminated. They appear to have been drawn artfully to conceal the fact that any of the transactions were of the prohibited character. But, aside from this consideration, the evidence discloses further that Brown, as manager of the elevator company, had charge of the books and records, and it is not pretended that there is any evidence in the record tending to prove that he ever called the attention of the officers or directors of the company to these reports or to any of them; on the contrary, it appears that they did not know of the existence of the reports until after the termination of Brown's employment; that they depended upon Brown for information concerning the records, and that Brown had told them that he ''wasn't gambling.''

In this connection defendants sought to show that in discussing the business of the elevator company during the last

year of Brown's employment, Brown had said to Stoner, the president of the elevator company: "I don't think we will make much money this year. I closed out a few options the other day on a loss, but I have shipped in cars after that that brought good profits, and we may come out a little ahead at the end of the year." Just what Brown meant by the use of the term "options" was not explained or sought to be explained; but under the by-laws of the elevator company dealings in options and futures, as such, were not prohibited altogether. Article 6 of the by-laws provides: "The buying and selling of options or futures shall be limited to the hedging of grain actually on hand or contracted for at a definite price. No grain shall be sold to arrive, except such as is actually purchased or contracted for at a definite price at the time such sale to arrive is made." In the absence of anything to indicate that Brown employed the term "options" otherwise than as indicated by the by-laws, his information conveyed to the president of the elevator company cannot be held to impute knowledge that he was engaged in gambling transactions or in transactions prohibited by the by-laws.

The relation of principal and agent is essentially one of trust and confidence, and the officers and directors of the elevator [10] company had the right to rely upon Brown's fidelity until knowledge of the fact that he was unworthy of confidence was brought home to them. They were not to assume that he would violate the by-laws in the face of his declaration that he was not going to do so; and they cannot be charged with negligence in failing to search the records for evidence of his duplicity. (*Haswell* v. *Standring,* 152 Iowa, 291, Ann. Cas. 1913B, 1326, 132 N. W. 417.)

Under these circumstances it cannot be said that the officers and directors of the elevator company had such knowledge of Brown's peculations as would constitute the acceptance of the benefits derived from such transactions a ratification of the acts, and the court did not err in refusing to submit the question of ratification to the jury.

As further evidence that the elevator company had ratified Brown's unauthorized dealings, the defendants sought to show [11] that during the year commencing July 1, 1915, and ending June 30, 1916, the elevator company made large profits; that at the annual meeting of the stockholders held in July, 1916, one Eckerly was present and addressed the stockholders, and informed them of the manner in which Brown had conducted the business in order to realize the profits; that he (Brown) had speculated in grain and had taken "awful chances"; that, if Brown should thereafter speculate for them and again gamble in their name and lose, he (Eckerly) hoped that they would not criticise Brown, but would be men enough to accept their losses as well as their profits. Eckerly was from Minnesota, and so far as disclosed in the record knew nothing of Brown's method of conducting the business, except so far as disclosed to him by Brown. Brown testified: "I informed him [Eckerly] that the company had made this last year $14,000; * * * that the market was going up a little right along, and that I didn't sell the grain just as I bought it, and I could see no risk in holding the grain, because it was going up all the time, and I sold it as it was shipped in, on a profit. * * * After I had informed Mr. Eckerly as I have stated, Eckerly referred to what I had told him at the stockholders' meeting."

The offer of proof does not assume to give the language employed by Eckerly in describing the manner in which Brown had conducted the business, but, if he used the language which Brown had used to him, it is perfectly apparent that the stockholders must have understood that the profits were realized from buying grain, holding it for a time, and shipping and selling it at an advance in price; and the fact that Eckerly may have characterized such transactions as speculating or gambling could not change their legitimate character or charge the stockholders with knowledge that Brown was violating the by-laws.

In this connection it is interesting to observe that defendants offered to prove by Brown that, "if an elevator company

buys grain, and holds the same without hedging at their ele-
vator for some time before selling the same, that this is out of
the ordinary way of doing business, and constitutes speculating
in grain''; and again they offered to prove by the same wit-
ness that between July 1, 1915, and June 30, 1916, he bought
grain for the elevator company and held the same for a rising
market without hedging, and that such transaction ''constitutes
speculating and gambling in grain''; that these transactions
were known to the stockholders of the elevator company; that
they accepted the profits derived from them, ordered the bal-
ance due to the commission house paid, and the remaining
profits distributed as dividends, gave a vote of thanks to
Brown, and employed him for another year. We think it
would be safe to say that every transaction in grain by an
elevator company is speculative. The word ''speculate'' means
''the act or practice of buying land, goods, shares, *etc.,* in ex-
pectation of selling at a higher price.'' (Webster's Interna-
tional Dictionary.) The elements which distinguish hedging,
option and future transactions, as such, from gambling trans-
actions are set forth fully in *Benson-Stabeck Co.* v. *Reservation
Farmers' Grain Co.,* 62 Mont. 254, 205 Pac. 651, and need not
be repeated here. It would impeach the intelligence of any
sane person to insist that the transaction described by Brown
constituted gambling as that term is ordinarily understood.

Again, defendants sought to show that during the year com-
mencing July 1, 1915, and ending June 30, 1916, the profits
derived from Brown's transactions and the character of the
transactions were disclosed in monthly reports received from
the commission house, and copies of these reports were offered in
evidence but excluded. The exhibits are not in the record,
were not certified to this court, and are not before us; but we
are not left in doubt as to their contents. Defendants offered
to prove ''that such monthly statements contain full notations
and full records of all grain transactions, including ordinary
grain transactions of buying grain and hedging, as well as
transactions of buying grain and holding the same for a while

without hedging, and without immediately selling, for a rise in the market price."

Again, defendants offered to prove that about the 1st of July, 1916, the secretary of the elevator company under the order of the directors made an examination of the records and books of the company, and made a financial statement, which apparently had been lost; that a typewritten memorandum found pasted in the elevator company's ledger "is a full, true, and correct copy of the letters and figures made out by him in making up such financial statement, and that such notations and statements as found on page 48 of Plaintiff's Exhibit 20 [the ledger] are identical with the notations and statements made by this witness [the secretary] in making out such financial statement for the previous year's business of the corporation." We confess our inability to understand the purpose of the offer. The memorandum may have concealed in it somewhere the evidence of gambling transactions, but, if so, we are unable to detect it. It follows:

| | |
|---|---:|
| Advanced on grain | $ 1,416 70 |
| Coal on hand | 296 80 |
| Wheat on hand | 571 60 |
| Flour on hand | 1,351 00 |
| Building | 7,738 83 |
| Bills receivable | 5,711 40 |
| Twine account | 11 00 |
| Accounts recoverable, coal, flour | 357 00 |
| Wagnild account | 176 00 |
| Fanning mill | 44 90 |
| Oats on hand | 579 60 |
| Flax on hand | 58 50 |
| Grain in transit | 8,397 89 |
| Balance due Winter-Ames | 2,444 57 |
| General expense | 3,612 96 |
| Expenses hedging charges | 876 25 |
| | $33,645 00 |

| | |
|---|---:|
| Capital stock | $ 8,400 00 |
| Balance carried in P. & L. | 376 30 |
| Stored wheat | 5,487 30 |
| Stored flax | 966 00 |
| Oats | 797 00 |
| Checks outstanding | 1,234 90 |
| Due Security State Bank | 351 53 |
| Gross profits (statement) | 16,031 97 |
| | $33,645 00 |

The attempt now made to justify the offer and to predicate reversible error upon the court's ruling in excluding it seems puerile in the extreme.

Complaint is made of the ruling of the trial court in excluding defendants' offer of proof numbered 10; but the record fails to show that it was ever passed upon. When the offer was made, the presiding judge said: "I am going to reserve ruling on this offer until after I have used the holiday tomorrow to look up authorities. If either of you gentlemen have anything to submit on that, I will consider that."

A somewhat diligent search of the record fails to disclose that anything further was ever done respecting the offer, and counsel for defendants do not point to any adverse ruling upon it.

The court did not err in rejecting the several offers of proof.

3. It is urged that plaintiff failed to give notice of its losses [12] within the time limited by the bond. The bond provides that recoverable losses must be discovered within fifteen months at most after the termination of Brown's employment, and that notice of such losses must be given to the surety company within ten days after discovery.

A bond of this character is a voluntary contract, and the surety company may prescribe the terms upon which it is willing to assume the risk. A provision requiring notice of loss within a specified period after discovery is recognized as valid, and, unless waived, must be complied with as a condi-

tion precedent to recovery upon the bond. (*California Savings Bank* v. *American Surety Co.*, 87 Fed. 118.) That plaintiff gave notice to the surety company is established beyond controversy, but whether the notice was given within ten days after the losses were discovered is the question upon which counsel for the respective parties fail to agree. The testimony introduced by plaintiff tends to prove that the losses were not discovered until after the books of the commission house were audited and the audit received by the plaintiff on March 2 or 3, 1918, and it is uncontroverted that the notice was given on March 9 following.

It is true that Stoner, the president of the elevator company, indicated that he was suspicious soon after Brown's employment ceased that recoverable losses had occurred, but he explained the difficulties encountered in the attempts made to ascertain the facts. The bond did not call upon plaintiff to act upon suspicion but upon discovery of recoverable losses; that is to say, when it was reasonably satisfied that Brown had committed acts resulting in losses to plaintiff which were recoverable; or, stating the principle differently, when it had knowledge of the existence of such facts as would justify a careful and prudent man in charging Brown with the acts of which complaint is now made. (*American Surety Co.* v. *Pauly*, 170 U. S. 133, 42 L. Ed. 977, 18 Sup. Ct. Rep. 552 [see, also, Rose's U. S. Notes].) Under proper instructions the jury were left free to determine when the losses were first discovered, and with the general verdict supporting plaintiff's theory that the discovery was not made until March 2 or 3, 1918, we are not disposed to interfere.

Aside from these principal contentions, other errors are assigned which require notice. Complaint is made of the ruling of the trial court in admitting certain evidence. For the purpose of illustrating the character of Brown's transactions which resulted in the losses, plaintiff introduced in evidence declarations and admissions made by Brown after the termination of his employment, to the general effect that the losses had resulted from his gambling in grain, as those terms are com-

monly understood. It is insisted that the surety company could not be bound by these statements; that the court erred in admitting the evidence; and that without this objectionable evidence plaintiff failed to make out a case against the surety company.

Whether declarations of the principal made after his default [13] and after the termination of the employment covered by the bond are admissible as against the surety is a question upon which the authorities are not agreed, and one which we need not stop to consider, since defendants are not in a position to raise it.

It is elementary that evidence may be admissible for a special [14] cial purpose, but not admissible generally; or it may be admissible for one purpose but not for another; or it may be admissible against one joint defendant but not against another. If, however, offered evidence is properly admissible for any purpose, it may not be excluded. (*Hester* v. *Western L. & A. Co.,* 67 Mont. 286, 215 Pac. 508; *Town of Meeker* v. *Fairfield,* 25 Colo. App. 187, 136 Pac. 471; *Flint* v. *Farwell Co.* (Ind. Sup.), 134 N. E. 664; *Chicago L. Co.* v. *Cox,* 94 Kan. 563, 147 Pac. 67; *Murray* v. *Frick,* 277 Pa. 190, 121 Atl. 47.) In this action [15, 16] Brown and the surety company are sued jointly. The record discloses that, when the witness Onstad was asked to repeat the statements made to him by Brown, the defendants objected jointly and not otherwise. Later the separate objection of each defendant was interposed upon the same grounds. It is a general rule that a joint objection to evidence in order to be available must be well taken as to all who join in it (*Fowler* v. *Newsom,* 174 Ind. 104, 90 N. E. 9); and if the evidence is admissible against one defendant, though not against another, their joint objection should be overruled. (*Langdon* v. *Ahrends,* 166 Iowa, 636, 147 N. W. 940; *O'Reilly* v. *Adams,* 163 App. Div. 60, 148 N. Y. Supp. 441; affirmed, 218 N. Y. 723, 113 N. E. 1062; *Sullivan* v. *Fant* (Tex. Civ. App.), 160 S. W. 612.) Under all of the authorities the declarations were admissible against Brown, but they could not be introduced and excluded at the same time. If the surety

company had desired to have such evidence limited in its application to Brown alone, the obligation was imposed upon it to request the court for an appropriate instruction which would accomplish that end (*Sweet* v. *Savings Bank*, 73 Kan. 47, 84 Pac. 542; 8 Wigmore on Evidence, 2d ed., sec. 13, p. 159; 38 Cyc. 1340), and, failing to make such request, it cannot now be heard to complain of the court's ruling admitting the evidence.

In order that a wrong inference may not be drawn from our [17] conclusion on this appeal in its entirety, we express our disapproval of instruction No. 6 given by the court; however, it is not open to the objections made by defendants' counsel at the time the instructions were settled, and by express statute (sec. 9349, Rev. Codes 1921), our review is limited to those objections.

To discuss the assignments of error more in detail would extend this opinion to an unreasonable length. We have examined every contention advanced by defendants, and fail to find sufficient ground for reversing the judgment.

The pretended appeal from the order refusing a new trial is dismissed and the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.